Filed 1/22/25  P. v. Davis CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL CHARLES DAVIS,<br><br>        Defendant and Appellant. | B331013<br><br>(Los Angeles County<br>Super. Ct. No. A086503) |

APPEAL from an order of the Superior Court of Los Angeles County, Kathryn A. Solorzano, Judge.  Affirmed.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven E. Mercer and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1984 a jury convicted Michael Charles Davis of first degree murder and robbery. Davis appealed, and we affirmed. (*People v. Davis* (1987) 189 Cal.App.3d 1177, 1201 (*Davis I*), disapproved on other grounds by *People v. Snow* (1987) 44 Cal.3d 216, 225-226.) In 2019 Davis petitioned for resentencing under Penal Code former section 1170.95 (now section 1172.6).[1] The superior court found Davis did not establish a prima facie case for relief and summarily denied the petition. Davis appealed, and we reversed and remanded for the court to appoint counsel for Davis, order a response from the People, and allow Davis to file a reply. (*People v. Davis* (Aug. 18, 2020, B297654) [nonpub. opn.] (*Davis II*).)

Following briefing and an evidentiary hearing, the superior court denied the petition. The court found Davis could still be convicted of felony murder because the People proved beyond a reasonable doubt that Davis was a major participant in the underlying felony (the robbery) and acted with reckless indifference to human life under the factors articulated in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), and *In re Scoggins* (2020) 9 Cal.5th 667 (*Scoggins*).

On appeal, Davis contends substantial evidence did not support the superior court's findings. We affirm.

---

[1] Further undesignated statutory references are to the Penal Code.

2

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Evidence at Trial*[2]

    1.    *The prosecution case*

On the night of December 26, 1981, 62-year-old Thaddeus Pracki went to Joly's Bar and sat at a booth with Davis and two other men. The four men stayed in the bar together from 10:00 p.m. to 1:00 a.m. Pracki had in the past occasionally picked up men and brought them back to his home. A witness saw Pracki with Davis and another man outside the bar between 1:00 and 1:30 a.m.

Shortly before 6:00 p.m. the next day, a neighbor went to Pracki's home and found Pracki was dead, with his naked body lying face down in a short hallway between the bedroom and the bathroom. Pracki's face was on a pillow, and his wrists were tied to his ankles behind his back with an electrical cord and cloth. An autopsy revealed Pracki died of strangulation. Pracki had six broken ribs, hemorrhages in his head, neck, and collarbone area, four bite marks on the back of his right arm, and numerous bruises and abrasions.

Los Angeles County Deputy Sheriff Ken Gallatin testified that he and four or five other sheriff's deputies responded to the scene after Pracki's neighbor called the Sheriff's Department. Deputy Gallatin saw no signs of forced entry. When he arrived, the lights were on in the kitchen, living room, and bedroom, and he heard a stereo playing in the dining room. He found Pracki's body "lying face down nude, hog-tied in the hallway, leading from

---

[2]    We summarize the testimony and stipulations entered at trial. At the evidentiary hearing the superior court admitted the trial transcripts into evidence.

3

the southwest bedroom to the bath." Deputy Gallatin found a man's watch on the bedroom floor next to a fallen statute. The bedroom "appeared to have been ransacked," with the contents of a metal file cabinet "strewn about the room." The drawers of the dresser were open with some contents "hanging partially out" and other items on the floor. Similarly, some contents from the closet were "strewn about on the floor and lying across the bed." Further, there was blood on the bedsheets, which had been torn off the bed. Deputy Gallatin found a butcher knife on the floor on the side of the bed, and another deputy lifted a fingerprint from the knife. Deputy Gallatin also saw a lamp lying on the bedroom floor with most of its electrical cord cut. The cord was the same color as the cord used to hog-tie Pracki. The deputies did not find a wallet or credit cards in the apartment.

Shortly before 5:00 p.m., an hour before the neighbor discovered the body, Davis entered a shoe store with a man and woman. Davis tried on a pair of boots and told the salesman he wanted to purchase them. Davis's male companion presented Pracki's credit card to purchase the boots. Because the man's name on his driver's license did not match the name on the credit card, the salesman called the credit card company. While the salesman was on the phone, Davis walked outside the store. When Davis saw that the salesman and a security guard were following him, he ran. Davis stipulated that he used another credit card belonging to Pracki to purchase gas on December 29, 1981 and a tire two days later.

Davis was arrested on June 23, 1982. At the May 5, 1983 preliminary hearing, a Los Angeles County deputy sheriff compared the fingerprint taken from the knife to Davis's fingerprint and determined they matched. There was no match

for a fingerprint that had been lifted from the lamp's electrical cord.

2.      *The defense case*

Davis testified he set up Pracki twice with "studs" and Pracki paid him $50 in advance each time. Davis made arrangements with Pracki to bring a stud named "Shug" to Joly's Bar on the evening of December 26, 1981. Pracki told Davis he did not have enough cash to pay him in advance, but Pracki would give Shug the money to pay Davis when Shug left his apartment. Davis agreed to be paid later, and he left. The following day Davis met Shug to get his payment. Shug told Davis that Pracki had not paid him but Shug had taken some of Pracki's credit cards. Shug gave Davis a gasoline company credit card that belonged to Pracki. Davis stated he used the credit card "two or three or four times," but he did not use the card after January 2, 1982. According to Davis, the knife with his fingerprint was retrieved from the home of Aaron Scott, where Davis was arrested. The knife was found in a pot of knives in Scott's bedroom.

B.      *The Verdict, Sentencing, and First Appeal*

Davis was charged with first degree murder (§ 187, subd. (a)) and robbery (§ 211). The information specially alleged the killing occurred in the commission of a robbery (felony murder) (§ 190.2, subd. (a)(17)). It also specially alleged the murder was intentional and involved the infliction of torture within the meaning of section 190.2, subdivision (a)(18). (*Davis I, supra*, 189 Cal.App.3d at p. 1184.) The jury was instructed on three theories of first degree murder: (1) willful, deliberate, and

5

premeditated murder; (2) felony murder in the perpetration of a robbery; and (3) murder by torture. (*Ibid*.) The jury convicted Davis of first degree murder, but it found the special allegations were not true. (*Ibid*.) The jury also convicted Davis of robbery and found true the allegation that Davis intentionally inflicted great bodily injury upon Pracki during the robbery within the meaning of section 12022.7. The trial court sentenced Davis on the murder count to 25 years to life; the court imposed and stayed a five-year term for the robbery under section 654. (*Id*. at p. 1183.)

On appeal Davis argued there was insufficient evidence to support his conviction for first degree murder. (*Davis I, supra*, 189 Cal.App.3d at p. 1184.) He asserted the jury must have based its verdict on the theory the killing was willful, deliberate, and premeditated because the jury found not true the special allegations of murder in the commission of a robbery and murder by torture. (*Ibid*.) Further, insufficient evidence supported a finding of willful, deliberate, and premeditated murder because there was no evidence of prior planning activity, a motive to kill, or a deliberate intent to kill. (*Ibid*.) We rejected Davis's argument, explaining that for either special circumstance to be true, a defendant must intend to kill or aid in the killing. (*Ibid*.) By contrast, we reasoned, "[b]oth felony murder and murder by torture are first degree murder but do not require an intent to kill. [Citations.] Under the facts, the jury might well have found that the killing occurred in the commission of a robbery, as a result of acts done with the willful, deliberate and premeditated intent to torture, i.e., to cause extreme and prolonged physical pain [citation], or both, but was not intentional." (*Ibid*.) We affirmed the judgment. (*Id*. at p. 1201.)

6

C.     *Davis's Petition for Resentencing*

On January 17, 2019 Davis, representing himself, filed a petition with a supporting declaration in the superior court stating he had met the requirements for resentencing under former section 1170.95, including that (1) the information allowed the prosecution to proceed under a theory of felony murder or the natural and probable consequences doctrine; (2) he was convicted of murder based on a theory of felony murder or the natural and probable consequences doctrine; and (3) he could not be convicted of first or second degree murder under changes to sections 188 and 189, effective January 1, 2019. With respect to his affirmation he could not be convicted of first or second degree murder under the 2019 amendments, Davis checked the box on the form petition stating he was not the actual killer, but he did not check the box stating he was not a direct aider and abettor who acted with the intent to kill, and he did not check the box stating he was not a major participant in the felony or did not act with reckless indifference to human life. Davis requested the court appoint him counsel and vacate his murder conviction.

On March 8, 2019 the superior court summarily denied Davis's petition. (*Davis II, supra*, B297654.) Davis appealed, arguing the superior court erred in finding him ineligible for resentencing relief without first appointing counsel. We reversed and remanded for the superior court to appoint counsel for Davis, order the prosecutor to file a response, and permit Davis to file a reply. (*Ibid.*) Following issuance of the remittitur, the superior court appointed counsel to represent Davis. On June 29, 2022 the court issued an order to show cause and set an evidentiary hearing. On December 9, 2022 the superior court granted Davis's

7

*Faretta* motion[3] to represent himself at the evidentiary hearing and accepted his waiver of his right to counsel.

D. *The Evidentiary Hearing*

The evidentiary hearing was held over the course of several days, from April 6 to July 11, 2023. At the July 11, 2023 hearing, the superior court indicated it had read the trial transcripts from Davis's trial that the People had offered into evidence. At the conclusion of the hearing, the superior court denied Davis's section 1172.6 petition. The court stated, "[T]he jury in making a determination with regard to the special circumstances and acquit[ing] the defendant of those special circumstances, never made a finding that he was not a major participant who acted with reckless indifference. . . . This court finds that the defendant was a major participant. . . . He is somebody who the jury factually found in the room participating in a robbery and inflicting great bodily injury. [¶] As a result, I don't think it's even a close question as to whether he's a major participant who acted with reckless indifference. He had motive to kill the victim. The motive was that the victim could identify him. . . . [¶] The victim, by the defendant's own statements and testimony, he and the victim had done some business before with him setting the victim up with men so that he could have some kind of sexual experience with someone, and he was willing to receive payment for that, meaning the defendant. So the reality is that the night that they met at the Joly bar, there's no evidence that that was the first time they met. [¶] The reality is even if that was the first time that they met, they met under circumstances where

---

[3]      *Faretta v. California* (1975) 422 U.S. 806, 835-836.

8

even the defendant has offered some story about him having set the victim up or linked the defendant to another individual. . . . So the reality is that certainly this victim, who was handled by the defendant, as the jurors found, in a very, very violent manner, inflicting personal injury, was in a position to identify the defendant for this very, very serious crime."

The court added, "Now, the fact that there was flight after the death of Mr. Pracki, a significant period of time, the fact of the use of the fruits of the crime by the defendant, the reality is that that shows the defendant, from my perspective, was a major participant as well, since circumstantially that he knew what happened in that room, that he knew that [Pracki] was dead, that he did nothing to stop it or that he actually committed that murder or he was there and facilitated it by not freeing the victim, who was hog-tied, so that he could defend himself or at least get out of there. [¶] So the reality is I think there's enough evidence under current law such that the defendant could be found liable under the law as it stands now on the theory of first degree murder on a felony murder theory of liability, as well as first degree murder, intentional and with premeditation and deliberation."

Davis timely appealed.

## DISCUSSION

A. *Senate Bill 1437 and Section 1172.6*

Senate Bill 1437 eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule. (*People v. Arellano* (2024) 16 Cal.5th 457, 467-468; *People v. Curiel* (2023) 15 Cal.5th 433, 448-449 (*Curiel*); *People v. Strong*

9

(2022) 13 Cal.5th 698, 707-708.)  Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule as set forth in section 189, subdivision (e).  (*Arellano*, at p. 468; *Curiel*, at p. 448; *People v. Reyes* (2023) 14 Cal.5th 981, 986.)  Section 189, subdivision (e), now requires the People to prove specific facts relating to the defendant's individual culpability: the defendant was the actual killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, aided or assisted in the commission of murder in the first degree (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life as described in section 190.2, subdivision (d) (the felony-murder special-circumstance provision) (§ 189, subd. (e)(3)).  (See *Arellano*, at p. 468; *Curiel*, at p. 448; *People v. Wilson* (2023) 14 Cal.5th 839, 868-869.)  Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2), effective January 1, 2022, expanded the scope of potential relief to apply Senate Bill 1437's ameliorative changes to individuals convicted of attempted murder and voluntary manslaughter.  (See § 1172.6, subd. (a).)

Senate Bill 1437 also provided a procedure (now codified in section 1172.6) for an individual convicted of felony murder or murder under the natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if the individual could not have been convicted of murder under Senate Bill 1437's changes to sections 188 and 189.  (*People v. Arellano, supra*, 16 Cal.5th at p. 468; *Curiel, supra*, 15 Cal.5th at p. 449.)

If the section 1172.6 petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief based on the requirements of subdivision (a), the sentencing court must appoint counsel to represent the petitioner upon his or her request pursuant to section 1172.6, subdivision (b)(3).  Where a petitioner makes the requisite prima facie showing the petitioner falls within the provisions of section 1172.6 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and resentence the petitioner on any remaining counts.  (§ 1172.6, subds. (c) & (d)(1).)

Section 1172.6, subdivision (d)(3), provides that at the evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019.  The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed."  Further, "[t]he prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens."  (*Ibid*.)  We review the superior court's decision to deny the petition after an evidentiary hearing for substantial evidence, provided the court understood the elements of the offense and applied the proper standard and burden of proof.  (*People v.*

11

*Reyes, supra*, 14 Cal.5th at p. 988; *People v. Pittman* (2023) 96 Cal.App.5th 400, 414.)

B.      *The Trial Court Applied the Correct Legal Standard*

Davis contends the superior court erred in reviewing the testimony for substantial evidence instead of requiring the prosecution to prove beyond a reasonable doubt that Davis was guilty of first degree murder.  Davis points to the statement by the court at the evidentiary hearing that "that the defendant could be found liable under the law as it stands now" for first degree murder based on a theory of felony murder or intentional premeditated murder.  Although the court used imprecise language in explaining its ruling, it is clear from the statements of the prosecutor and the court during the evidentiary hearing that the court applied the correct standard.

At the initial April 6, 2023 evidentiary hearing, the prosecutor argued, "What's relevant is really the court's examination of the evidence which for me is the trial, testimony from the trial which the statute says that we can rely on and any new evidence either side wishes to present.  And it's for the court to determine based on that whether or not Mr. Davis is guilty of murder beyond a reasonable doubt."  At the May 12 continued hearing, the prosecutor likewise stated the superior court must resolve whether there is "evidence to prove to this court beyond a reasonable doubt that Mr. Davis is guilty of murder under a malice theory or whether or not he's guilty of murder under a felony murder theory as the law currently defines murder."  The court stated at that hearing, "Even if I decide that I can determine at the conclusion that the evidence is proof beyond a reasonable doubt that the defendant is guilty and he's guilty

12

presently under permissible standards of liability for murder. Okay. I have to have something to back it up." And at the May 19 continued hearing, the court reiterated that the People "have the burden of proof at this hearing to prove that he's guilty beyond a reasonable doubt on a theory that is valid today after the amendments to murder liability under [sections] 188 and 189."

In light of this record, it is clear that the court in its findings was aware of the correct legal standard and found the People had proven beyond a reasonable doubt that Davis was guilty of first degree murder under current law.

C. *Substantial Evidence Supports the Superior Court's Finding Davis Is Guilty of Felony Murder Under Current Law*

1. *The major participant and reckless indifference factors under* Banks, Clark, *and* Scoggins

The Supreme Court's decisions in *Banks, Clark,* and *Scoggins* identified a nonexhaustive list of factors courts should consider in determining whether an individual was a major participant in the underlying felony and acted with reckless indifference to human life as required by section 189, subdivision (e)(3). (*Scoggins*, *supra*, 9 Cal.5th at pp. 676-677; *Clark, supra*, 63 Cal.4th at pp. 618-623; *Banks*, *supra*, 61 Cal.4th at p. 803.) The Supreme Court has cautioned that "no one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Banks*, at p. 803; accord, *People v. Strong, supra,* 13 Cal.5th at p. 706; *Clark,* at p. 618.) Rather, the evaluation of an individual's culpability for felony murder requires a "fact-intensive, individualized inquiry." (*Scoggins*, at

13

p. 683; accord, *People v. Montanez* (2023) 91 Cal.App.5th 245, 271.)

In *Banks*, the Supreme Court enumerated the following factors courts must consider in determining whether a defendant is a major participant under the totality of the circumstances: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks, supra*, 61 Cal.4th at p. 803, fn. omitted; accord, *Clark, supra*, 63 Cal.4th at p. 611.)

In *Clark* and *Scoggins*, the Supreme Court specified the relevant factors in determining whether a defendant acted with reckless indifference to human life under the totality of the circumstances. The court observed these factors "'significantly overlap'" with the major participant factors because "'the greater the defendant's participation in the felony murder, the more likely that he [or she] acted with reckless indifference to human life.'" (*Clark, supra*, 63 Cal.4th at p. 615.) The factors relevant to whether an individual acted with reckless indifference to human life include: "Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the

perpetrators of the felony and the victims?  What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force?  What efforts did the defendant make to minimize the risks of violence during the felony?"  (*Scoggins, supra*, 9 Cal.5th at p. 677; accord, *Clark, supra*, 63 Cal.4th at pp. 618-622.)

As the *Scoggins* court explained, "Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.'"  (*Scoggins, supra*, 9 Cal.5th at p. 676; accord, *Banks, supra*, 61 Cal.4th at p. 808 ["[a]wareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient"; reckless indifference to human life requires "knowingly creating a '*grave risk of death*'" (italics added)].)  "Reckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.'"  (*Scoggins*, at pp. 676-677, quoting *Clark, supra*, 63 Cal.4th at pp. 616-617.)  "Reckless indifference to human life has a subjective and an objective element.  [Citation.]  As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.'  [Citations.]  As to the objective element, '"[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in

the actor's situation."'" (*Scoggins*, at p. 677; accord, *Clark*, at p. 617.)

2.  *Davis was a major participant in the robbery*

Substantial evidence supports the superior court's finding Davis was a major participant in the robbery.[4] Davis knew Pracki before the December 27, 1981 incident, having set him up twice with "studs," each time getting paid up front. And Davis was involved in the planning of the incident, arranging with Pracki to bring "Shug" to Joly's Bar on the night of December 26. Further, Davis was with Pracki and two other men at the bar that night, and he was seen with Pracki and another man a few hours later in front of the bar, between 1:00 and 1:30 a.m. The evidence also showed Davis was present at the crime scene because his fingerprint was found on a butcher knife near the bed in the ransacked bedroom. Although Pracki did not suffer any stab wounds, the superior court could reasonably have inferred that the butcher knife was used to cut the electrical cord that tied Pracki's hands to his ankles, and the cord came from the lamp found lying on the bedroom floor.

Davis argues he could have robbed Pracki and left before the person who bound and killed Pracki arrived. But the jury

---

[4]     The People argue on appeal that the superior court at the evidentiary hearing erred in excluding Davis's admission to Scott that he murdered a man he had taken from Joly's bar to rob. Even though this testimony was admitted at trial, the superior court did not err (or abuse its discretion) because the testimony involved two layers of hearsay, and therefore was inadmissible under the Evidence Code. (See § 1172.6, subd. (d)(3).)

16

found true that Davis intentionally inflicted great bodily injury upon Pracki during the robbery, a finding that is preclusive at the section 1172.6 proceeding. (*Curiel, supra*, 15 Cal.5th at p. 453 ["a relevant jury finding is generally preclusive in section 1172.6 proceedings"]; *People v. Arnold* (2023) 93 Cal.App.5th 376, 379 ["court erred in finding that defendant stabbed the victim to death after the jury found not true an allegation that defendant personally used a knife"].) Further, the jury's finding that Davis intentionally inflicted great bodily injury on Pracki necessarily means Davis was responsible for at least some of Pracki's injuries. As discussed, Pracki was found with six broken ribs, hemorrhages in his head, neck, and collarbone area, four bite marks on his arm, and numerous bruises and abrasions. Thus, Davis's own actions played a role in Pracki's death, at a minimum by making it harder for Pracki to resist.

Moreover, Davis's conduct after the murder supports a finding he was a major participant. There was no evidence Davis tried to prevent the murder or minimize the harm to Pracki. To the contrary, on the day of the murder—just one hour before the neighbor discovered Pracki's body—Davis tried to use one of Pracki's credit cards to buy a pair of boots. Davis also made additional purchases with another of Pracki's credit cards on December 29 and 31. It was a reasonable inference that Davis had no concern about using Pracki's credit cards because he knew Pracki was dead.

3. *Davis acted with reckless indifference to human life*

Substantial evidence also supports the superior court's finding Davis acted with reckless indifference to human life. As discussed, Davis was present at Pracki's home where the murder

17

occurred, and it was a reasonable inference he was the one who cut the electrical cord that was used to hog-tie Pracki. Further, Pracki faced a violent death, with six broken ribs, hemorrhages, bite marks, and numerous bruises and abrasions (in addition to his death by strangulation). There was no evidence Davis attempted to minimize these injuries, and to the contrary, Davis inflicted some of the injuries given the jury's finding he intentionally inflicted great bodily injury on Pracki.

It is also a reasonable inference that Davis spent some time in Pracki's home, which would have been necessary to grab the butcher knife, cut the electrical cord, and inflict significant injuries on Pracki. In addition, the lights were on throughout the apartment and the bedroom was ransacked, with the contents of a metal file cabinet, dresser, and closet strewn about the room and the bloody bedsheets torn off the bed. Therefore, there was time for Davis to restrain his accomplice or aid the victim, but he failed to do so. Instead, he stole Pracki's credit cards and fled. As discussed, Davis attempted to use Pracki's credit card later that evening, and he successfully used another credit card two and four days after the murder. As discussed, the superior court could reasonably have inferred Davis freely used Pracki's credit cards with the knowledge that Pracki was dead.

## DISPOSITION

The order denying Davis's petition for resentencing under section 1172.6 is affirmed.

FEUER, J.

We concur:

SEGAL, Acting P. J.

PULOS, J.*

---

\*      Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.